**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

**DELORES ANN YOUNG,**

    **Plaintiff,**

v.                 Case No. 2:15-cv-02703-SHM-cgc

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social**
**Security Administration,**

    **Defendant.**

---

**ORDER AFFIRMING DECISION OF COMMISSIONER**

---

  Plaintiff has filed this appeal of the denial of her application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381, *et seq*. By consent of the parties, this case has been referred to the United States Magistrate Judge to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.

  Plaintiff filed her application for benefits on June 6, 2012. Plaintiff's applications were denied initially and on reconsideration. A hearing was held on April 29, 2014 before Administrative Law Judge ("ALJ") John A. Peebles. On June 25, 2014, the ALJ found the Plaintiff was not under a disability as defined in the Act. This decision became the Commissioner's final decision. Plaintiff then filed this action requesting reversal of the Commissioner's decision. For the reasons set forth below, the decision of the Commissioner is AFFIRMED.

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which she was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* The court's review is limited to determining whether or not there is substantial evidence to support the Commissioner's decision, 42 U.S.C. § 405(g); *Wyatt v. Secretary of Health & Human Services*, 974 F.2d 680, 683 (6th Cir.1992); *Cohen v. Secretary of Health & Human Services*., 964 F.2d 524, 528 (6th Cir.1992), and whether the correct legal standards were applied, *Landsaw v. Secretary of Health & Human Servs.,* 803 F.2d 211, 213 (6th Cir.1986).

The Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly. *See Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984). When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Plaintiff was born on July 9, 1970. (R. at 19). She has a limited education, is able to communicate in English, and has past relevant work experience as a fast-food worker. (*Id.*)

The ALJ determined as follows: (1) the claimant has not engaged in substantial gainful activity since June 6, 2012; (2) the claimant has the severe impairments of obesity, lumbar degenerative disc disease, sciatica, left knee osteoarthritis, and hypertension; (3) the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) the claimant has

the residual functional capacity to occasionally and frequently lift and carry 10 pounds, stand and walk 2 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday with the option to alternate standing or sitting as necessary; with complete limitation in climbing ladders, ropes or scaffolds, and occasional limitation in climbing ramps and stairs, crouching, stooping, kneeling, or crawling and no workplace exposure to unprotected heights; (5) the claimant is unable to perform any past relevant work; (6) the claimant was forty-one years old on the date the application was filed, which is defined as a younger individual age 18-44; (7) transferability of job skills is not an issue because the claimant's past relevant work experience is unskilled; (8) considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform; and, (9) the claimant has not been under a disability, as defined in the Act, since June 6, 2012—the date the application was filed.

The Social Security Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). The claimant bears the ultimate burden of establishing an entitlement to benefits. *Born v. Secretary of Health & Human Services.*, 923 F.2d 1168, 1174 (6th Cir.1990). The initial burden of going forward is on the claimant to show that she is disabled from engaging in her former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. *Id.*

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

> 1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.[1]

4. An individual who can perform work that he or she has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

*Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301 (6th Cir. 1988). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520 & 416.920.

Here, the sequential analysis proceeded to the fifth step. At step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's RFC . . . and vocational profile." *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). Ultimately, the ALJ found that Plaintiff is capable of making an adjustment to other work that exists in significant numbers in the national economy, and, therefore, was not disabled within the meaning of the Act.

On appeal to this Court, Plaintiff raises two issues. First, she asserts that the ALJ erred in determining Plaintiff's RFC because he failed to obtain an updated medical expert opinion and/or

---

[1] Before proceeding to step four of the sequential evaluation process, the ALJ must determine the claimant's RFC pursuant to 20 C.F.R. 404.1520(e) and 416.920(e). An individual's residual functional capacity is his or her ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe pursuant to 20 C.F.R 404.1520(e), 404.1545, 416.920(e) & 416.945.

consultative examination in light of new and material evidence received prior to the issuance of the decision. Second, she asserts that the ALJ erred in determining Plaintiff's RFC by failing to properly apply the appropriate standard in considering the credibility of a claimant's subjective complaints of pain.

## I. Updated Consultative Examination

First, Plaintiff asserts that the ALJ erred by not obtaining an updated medical source opinion and/or consultative examination to consider a February 25, 2014 MRI that Plaintiff claims objectively validates the post-surgical resurgence of her severe back pain and leg symptoms. (R. at 415-16). The MRI was performed before the April 29, 2014 hearing; thus, it was not available in August 2012 when Dr. Bruce Randolph, M.D.'s consultative examination was performed. Thus, Plaintiff asserts that the "ALJ never had this evidence reviewed by any medical expert" and "instead based his ultimate conclusion upon his lay interpretation."

In general, it is the duty of the claimant to prove that she is disabled, and a claimant has an ongoing duty to inform the ALJ of or submit all evidence known to her that relates to whether or not she is disabled. 20 C.F.R. § 416.912(a), (c). The responsibility of the ALJ is to develop the claimant's complete medical history for at least the 12 months preceding the month in which the claimant files her application unless there is a reason to believe that development of an earlier period is necessary or unless she says that her disability began less than 12 months before she filed her application. 20 C.F.R. § 416.912(d). The ALJ must make every reasonable effort to help the claimant get her reports from her medical sources when he is given permission to request them. *Id*.

The ALJ may obtain a consultative examination if he cannot get the information needed to resolve the claim from the Plaintiff's medical sources. 20 C.F.R. § 416.919a(a); *see also* 20 C.F.R. § 416.912(e) ("Generally, [the ALJ] will not request a consultative examination until [he has] made every reasonable effort to obtain evidence from [a claimant's] own medical sources."). Consultative examinations may be obtained "to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision." 20 C.F.R. § 416.919a(b). Examples of when a consultative examination may be obtained are "to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis" and include but are not limited to the following: (1) additional evidence is needed but not contained in the claimant's medical sources; (2) the evidence that may have been available from a treating or other medical source cannot be obtained for reasons beyond the claimant's control, such as death or noncooperation of a medical source; (3) highly technical or specialized medical evidence is not available from treating or other medical sources; or, (4) there is an indication of change in the claimant's condition that is likely to affect the claimant's ability to work but the current severity of the claimant's condition is not established. *Id*.

Upon review, the February 2014 MRI was part of the record before the ALJ. The ALJ also performed his responsibility to develop the claimant's complete medical history for at least the 12 months preceding the month in which the claimant files her application. Additionally, the ALJ obtained a consultative examination of Plaintiff by Dr. Randolph on August 21, 2012, which was following Plaintiff's back surgery in April 2012. (R. at 15). Dr. Randolph opined that Plaintiff was "severely limited in performing strenuous and physically demanding activities such as heavy lifting, pushing, pulling, repetitive bend, twist, squat, and climbing. She can sit with intermittent standing and walking every 15 to 30 minutes as needed. She should be able to lift and carry up to 10

6

[pounds]." (R. at 316). Although not considered by Dr. Randolph, Plaintiff's subsequent February 2014 MRI report further confirmed that Plaintiff had "[p]ostoperative changes . . . on the left at L5-S1" and "a broad-based central disc protrusion . . . resulting in moderate lateral recess and neural foraminal narrowing on the left." (R. at 416).

Because the February 2014 MRI was contained in the record, 20 C.F.R. § 416.919a(b)(1), (2), and (3) do not apply. Thus, it appears that Plaintiff's claim can only arguably be based upon 20 C.F.R. § 416.919a(b)(4), which *permits but does not require* the ALJ to obtain a consultative examination if there is an indication in the change of the claimant's condition. Yet, upon review, it appears to the Court that the record contains extensive evidence that "validates the post-surgical resurgence of her severe back pain and leg symptoms." The ALJ discussed Plaintiff's post-surgical medical history in exhaustive detail. (*See* R. at 14-16).

Specifically, the ALJ found that Plaintiff "tolerated the procedure well and her remaining hospital course was uncomplicated through discharge." (R. at 14). At her May 2012 post-surgical follow-up, she presented with "no apparent distress with normal physical examination." (*Id*.) She began physical therapy on May 29, 2012 "due to back pain radiating into the left lower extremity with complicating morbid obesity noted." (*Id*.; citing Exhs. 4F, 5F). "Daily notes show steady improvement" and a "June 22, 2012 report shows decreased pain and leg paresthesia with improved functional activities, good exercise tolerance, and less muscle guarding." (*Id*. at 14-15). Plaintiff was seen at Semmes Murphey clinic for another follow-up in June 2012 due to complaints of ongoing pain, where she was prescribed steroid anti-imflammatory medication. (*Id*. at 15). A June 25, 2012 lumbar MRI revealed "postoperative changes at L5 with no suggestion of residual or recurrent disc herniation." (*Id*.; citing Exh. 5F). "Treatment notes, dated June 27, 2012 report a 95

7

percent improvement from postoperative status with some remaining discomfort." (*Id*.) Her examination showed a "well-healed wound," "normal gait and station, "no limb pain," and "mild neuropathic pain." (*Id*.) She was at that time prescribed a neuropathic pain medication. (*Id*.)

The ALJ found that, on August 21, 2012, Dr. Randolph performed the consultative examination, which concluded that Plaintiff had "tenderness on lumbar palpitation," "limited lumbar range of motion," "limited left hip range of motion," "two-centimeter muscle atrophy in the left thigh," and "decreased sensation in the left foot." (*Id*.) Dr. Randolph noted that Plaintiff used a cane to walk, which was "not necessary for ambulation," although Plaintiff did have an "antalgic gait." (*Id*.) Dr. Randolph's impression was "status post back surgery, chronic low back pain with radiculopathy and obesity." (*Id*.)

The ALJ found that, on October 22, 2012, Plaintiff had a lumbar x-ray, which revealed normal lumbar alignment, no fracture, normal disc height with no evidence of significant degenerative changes, normal facet joints and no soft tissue abnormality. (*Id*.) On June 12, 2013, Plaintiff was seen at Methodist University Hospital's emergency room for reports of back pain. (*Id*.; citing Exh. 10F). "Physical examination was within normal limits with the exception of pain elicited on right lumbar paraspinal palpitation." (*Id*.) Plaintiff was diagnosed with sciatica and back spasm, stabilized, and discharged on the same day with a limited amount of narcotic analgesic pain medication. (*Id*.) Plaintiff was next seen at Christ Community Health Clinic on August 16, 2013, where she was evaluated for hypertension and low back pain. (*Id*.; citing Exh. 11F). Plaintiff presented with left lumbar spine tenderness, normal musculoskeletal range of motion, and deep tendon reflexes. (*Id*.) Plaintiff was assessed with low back pain and prescribed therapeutic levels of medication for muscle spasm and pain. (*Id*.) In October 2013, Plaintiff was referred to physical

8

therapy and was given an increased level of pain medication. (*Id*.) She underwent physical therapy in October and November of 2013. (*Id*.; citing Exhs. 11F, 12F, 14F). On November 14, 2013, Plaintiff was discharged from physical therapy because she "stopped attending and will not return phone calls." (*Id*.).

The ALJ noted that Plaintiff returned to Christ Community Health Clinic on February 7, 2014 with ongoing complaints of low back pain, where she was prescribed non-steroid anti-inflammatory medications. (*Id*.; citing Exhs. 13F, 15F). Thereafter, the February 25, 2014 MRI at issue in this case was performed. (*Id*.) The ALJ specifically discussed the February 2014 MRI, stating that it revealed "disc protrusion at L5, moderate foraminal narrowing at L5, otherwise normal lumbar height and alignment." (*Id*. at Exh. 17F). Plaintiff was diagnosed with displacement of lumbar disc without myelopathy, lumbago and unspecified backache. (*Id*.)

The ALJ found that Plaintiff was seen in the emergency room again on March 3, 2014 for back ache. (*Id*.; Exh. 17F). At her March 2014 visit to Christ Community Health Clinic, Plaintiff was advised to "stay active" and "avoid sitting extended periods on buttock." (*Id*. at 15-16; citing Exh. 15F). Plaintiff continued to be prescribed therapeutic levels of neuropathic pain medication and Naproxen. (*Id*.) Physical examination showed her gait to be within normal limits and no neurological abnormality. (*Id*.) Plaintiff was assessed with back pain, nonspecific myalgia, neuropathy, hypertension and obesity, and she was prescribed non-steroid anti-inflammatory medication and Tylenol #3 for pain. (*Id*.) Plaintiff was seen at the Pain Management Center on May 9, 2014, where the examination notes show no focal neurological deficit, left leg pain, and low back pain. (*Id*.; citing Exh. 18F).

9

After considering the ALJ's extremely thorough discussion of Plaintiff's post-operative back pain and leg symptoms, the Court concludes that there is no indication that the February 2014 MRI demonstrates an indication of change in the claimant's condition under 20 C.F.R. § 416.919a(b)(4). Instead, the record reflects that Plaintiff had post-operative back pain and leg symptoms documented on numerous occasions by the ALJ from the time of her April 2012 surgery until May 9, 2014 when the medical records conclude. Thus, the Court concludes that the ALJ did not have a basis under 20 C.F.R. § 416.919a to obtain an updated consultative examination.

Further, it is worth noting that Plaintiff did request an updated consultative examination before the ALJ who expressly stated that he would review the medical record to determine if it was necessary, which he ultimately found it was not. Thus, this issue was considered and decided by the ALJ based upon the medical record and was not an oversight. (R.at 28, 50).[2] Finally, even if the Court were to find that the ALJ did have any basis for requesting an additional consultative examination, 20 C.F.R. § 416.919a provides that it would optional and not required.

Thus, the Court concludes that the ALJ did not err in declining to obtain further consultative examinations of Plaintiff's back pain and leg symptoms because they are extensively documented in the record and thoroughly considered by the ALJ.

**II. Credibility of Plaintiff's Subjective Complaints of Pain**

Next, Plaintiff asserts that the Commissioner's decision should be reversed because the ALJ failed to properly apply the appropriate standard for when a claimant seeks to establish disability through testimony of pain or other subjective symptoms. The Commissioner responds that the ALJ

---

[2] Plaintiff further states that the ALJ "failed to discuss his rationale for determining [that] such an updated consultative examination was unnecessary"; however, Plaintiff provides no support for the proposition that such a discussion is required.

did not err but instead properly determined that Plaintiff's reports of subjective pain were not sufficiently credible to establish disability.

The ALJ stated that he must "follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms." (R. at 16). Then, "once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." (*Id*. at 16-17). The ALJ noted that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based upon a consideration of the entire case record." (*Id*. at 17).

The ALJ found that Plaintiff has the severe impairments of obesity, lumbar degenerative disc disease, sciatica, left knee osteoarthritis, and hypertension. (R. at 14). The ALJ further as follows with respect to Plaintiff's complaints of pain and the credibility thereof:

> [T]he claimant alleged she is disabled due to back and leg pain and numbness, which causes difficulty bending, lifting and walking. The claimant offered that she is able to lift 8-10 pounds and sit for 30 minutes. She did not report side effects or problems due to prescribed medications.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

The claimant's subjective allegations regarding the extent of her physical limitations were not entirely credible. The record shows inconsistencies among various statements, inconsistencies between extreme allegations in hearing testimony and disability forms and the clinical findings described in the medical evidence, and inconsistency between the level of severity she described and the low level and infrequent nature of her medical treatment and medication, as well as frequent noncompliance.

The claimant alleged in hearing testimony that she virtually does nothing around her home; however, function reports show that she manages her own grooming and hygiene, completes household chores including laundry, ironing and cleaning, and makes simple meals. She also reported visiting friends and relatives' homes and going shopping for food and household products. Although there is no specific description of these activities, these types of tasks generally include a level of lifting, carrying, standing, walking, pushing, pulling, reaching, and crouching that the claimant alleges that she is unable to sustain. Additionally, post hearing evidence does not lend credence to the claimant's subjective complaints. She testified that she can drive for short periods and sit for 30 minutes at a time. Conversely, she reported that she spends most of the day sitting and watching television and completing puzzle books, which would indicate the claimant could certainly sustain periods of sitting as required in sedentary occupations. The claimant also attended the consultative examination with Dr. Randolph using an assistive device for ambulation and balance. There is no indication that she has been prescribed an assistive device and she is not subsequently observed to use it, which might indicate that it was used for effect at the consultative examination, rather than out of necessity. In fact, Dr. Randolph offered that the claimant's cane was not necessary for ambulation.

In terms of the claimant's alleged back impairment, the record shows a history of successful L5-S1 hemilaminectomy and microdis[c]ectomy with minimally invasive surgery. Rather than additional degenerative spinal disease, subsequent records diagnose sciatica, lumbar strain and lumbago, for which the claimant was prescribed therapeutic levels of pain medication and physical therapy. In February 2014 magnetic resonance imaging showed a disc protrusion at L5 with moderate foraminal narrowing and otherwise normal lumbar height and alignment. Again, the claimant has been treated conservatively, with no evidence of additional physical therapy, epidural steroid injection therapy, or suggestion of additional surgical intervention. She was seen at a pain management center on May 9, 2014, but there is no evidence that she returned for treatment. It is also interesting to note that the claimant was noncompliant with physical therapy. The record clearly shows that the claimant has ongoing lumbar spine impingement with pain and numbness radiating to the lower extremities. Although she has been diagnosed with radiculopathy, there are no supporting nerve conduction studies or electromyography. The undersigned also notes the very recent, May 2014, x-ray showing mild left knee osteoarthritis, for

which the claimant has had no treatment. There is no statement from a treating or specialty source that would support the level of disabling impairment alleged by the claimant. Her history of treatment has been sporadic and relatively noninvasive. In limiting the claimant to the sedentary level of exertion with postural limitations and an option to sit or stand as necessary, the undersigned has fully considered the claimant's musculoskeletal impairments and their possible effects on her function.

The record shows that claimant also has a longitudinal history of obesity. Although the claimant's treating sources have reported no obesity associated functional limitations, Social Security Ruling 02-1p provides, in pertinent part, that obesity can cause limitation of function in an individual's ability to sit, stand, walk, lift, carry, or push/pull, and may affect the ability to climb, balance, stoop, and crouch. In limiting the claimant to the sedentary level of exertion and placing postural limitations, the claimant's obesity was fully considered in accordance with Social Security Ruling [02-1p].

(R. at 17-18) (citations omitted).

To assess a Plaintiff's subjective complaints of pain, the ALJ must consider whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)). If the ALJ finds that such an impairment exists, he must "evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures take to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions. *Rogers*, 486 F.3d at 247.

Social Security Ruling 96-6p also requires the ALJ to explain his credibility determinations in his decision such that it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons

for that weight. "In other words, blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248. "[W]here subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important." *Id*. (citing *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985)). Thus, ultimately, it is for the ALJ to evaluate the credibility of witnesses, but the ALJ is not free to make credibility determinations based solely upon an intangible or intuitive notion of an individual's credibility. *Rogers*, 486 F.3d at 247 (citations omitted).

Upon review, the ALJ concluded that Plaintiff has several severe underlying medically determinable physical impairments that could reasonably be expected to produce her symptoms. However, the ALJ concluded that her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. The ALJ was sufficiently specific to make clear the reasons for his credibility assessment. Accordingly, the ALJ properly considered Plaintiff's subjective complaints of pain.

**III. Conclusion**

For the reasons set forth herein, the decision of the Commissioner is AFFIRMED.


**IT IS SO ORDERED** this 1st day of September, 2016.

                                      s/ Charmiane G. Claxton
                                      CHARMIANE G. CLAXTON
                                      UNITED STATES MAGISTRATE JUDGE